CR17    0175    SI

# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

### VENUE: SAN FRANCISCO

UNITED STATES OF AMERICA,

V.

**ERIC WORTHEN,
TAJ ARMON REID, a/k/a TAJ REID,
DERF BUTLER,
ANTON KALAFATI,
CLIFTON BURCH,
PETER MCKEAN,
LEN TURNER, and
LANCE TURNER,**

DEFENDANT(S).

FILED

APR – 6 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---

# INDICTMENT

18 U.S.C. § 371 -- Conspiracy To Receive A Bribe and Reward By
Agent of Organization Receiving Federal Funds;
18 U.S.C. § 666(a)(1)(B) --Receipt of Bribe and Reward by Agent of
Organization Receiving Federal Funds;
18 U.S.C. § 371 – Conspiracy to Defraud the United States;
18 U.S.C. § 1001(a)(2) – False Statement;
18 U.S.C. § 2 – Aiding and Abetting, and
18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) -- Forfeiture

---

A true bill.

_____
                                  Foreman

Filed in open court this _____ day of

*April 6, 2017*

_____
                                  Clerk

Bail, $ Summons to be issued for all
Defendant on
April 28, 2017 at
9:30 a.m.

1  BRIAN J. STRETCH (CABN 163973)
   United States Attorney
2
3                          F I L E D
4                         APR - 6 2017
5                      SUSAN Y. SOONG
                    CLERK, U.S. DISTRICT COURT
6                NORTHERN DISTRICT OF CALIFORNIA
7
8
9                   UNITED STATES DISTRICT COURT
10                NORTHERN DISTRICT OF CALIFORNIA
11                     SAN FRANCISCO DIVISION
12                                      No. C R 17   0175 SI
   UNITED STATES OF AMERICA,           )
13                                      )
         Plaintiff,                     )
14                                      ) VIOLATIONS:
   v.                                   ) 18 U.S.C. § 371 -- Conspiracy To Receive A Bribe
15                                      ) and Reward By Agent of Organization Receiving
   ERIC WORTHEN,                        ) Federal Funds;
16 TAJ ARMON REID, a/k/a TAJ REID,     ) 18 U.S.C. § 666(a)(1)(B) --Receipt of Bribe and
   DERF BUTLER,                         ) Reward by Agent of Organization Receiving Federal
17 ANTON KALAFATI,                     ) Funds;
   CLIFTON BURCH,                       ) 18 U.S.C. § 371 – Conspiracy to Defraud the United
18 PETER MCKEAN,                       ) States;
   LEN TURNER, and                      ) 18 U.S.C. § 1001(a)(2) – False Statement
19 LANCE TURNER,                       ) 18 U.S.C. § 2 – Aiding and Abetting
                                        ) 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) --
20                                      ) Forfeiture
                                        )
21                                      ) SAN FRANCISCO VENUE
                                        )
22       Defendants.                    )
                                        )
23                                      )
24
                              INDICTMENT
25
         The Grand Jury charges:
26
                       INTRODUCTORY ALLEGATIONS
27
         At all times relevant to this Indictment, with all dates being approximate and all date ranges both
28

INDICTMENT                              1

1 | approximate and inclusive:

2 | The Defendants

3 | 1.  Defendants ERIC WORTHEN and TAJ ARMON REID, a/k/a TAJ REID, were partners in a
4 | consulting business known as "Reid Worthen."

5 | 2.  Defendant ERIC WORTHEN was employed by the State of California as Assistant Deputy
6 | Secretary for Administrative Services for the California Department of Veterans Affairs ("CalVet") and
7 | was an agent of CalVet.  WORTHEN was assigned to the Division of Veterans Homes ("the CalVet
8 | Homes Division").

9 | 3.  Defendant DERF BUTLER was a business management consultant and President of Butler
10 | Enterprise Group, LLC, based in San Francisco.  Butler Enterprise Group, LLC assisted small business
11 | enterprises, especially minority-owned businesses, in obtaining construction and other contracts with
12 | public entities.

13 | 4.  Defendant ANTON KALAFATI was President of B Side Inc., a construction company
14 | based in Oakland, California.

15 | 5.  Defendant CLIFTON BURCH was President of Empire Engineering and Construction, Inc.,
16 | a construction company based in Oakland and San Francisco, California.

17 | 6.  Defendant PETER MCKEAN was Vice President of Townsend Management, Inc., a
18 | construction management company based in San Francisco, California.

19 | 7.  Defendant LEN TURNER was Chief Financial Officer of Turner Group Construction, a
20 | construction company and general contractor based in Oakland, California.

21 | 8.  Defendant LANCE TURNER was Chief Operating Officer of Turner Group Construction, a
22 | construction company and general contractor based in Oakland, California.

23 | Other Relevant Individual and the Relevant Entities and Contracts

24 | 9.  Individual A represented himself as a real estate and commercial developer based outside
25 | California who was interested in pursuing development projects and construction contracts with public
26 | entities in California.

27 | 10. CalVet was a California state agency that provided services to California veterans and their
28 | families.  CalVet received in excess of $10,000 from the United States government during the one-year

INDICTMENT                                       2

1  period from January 1, 2013 through December 31, 2013 under a Federal program involving a grant,
2  contract, subsidy, loan, guarantee, insurance, and other forms of Federal assistance.

3      11. The CalVet Homes Division had responsibility for oversight of the operation of eight
4  Veterans Homes in California that provided residential facilities for veterans.  Those included Veterans
5  Homes in Ventura and West Los Angeles.

6      12. Pursuant to an agreement between the City of Ventura and the State of California, the State
7  of California had the option of building an additional facility for veterans on ten unimproved acres at the
8  site of the Veterans Home in Ventura ("the Ventura Veterans Home project") as long as construction
9  commenced by January 1, 2020.  The United States government would provide the funds for a portion
10  of the cost to build the Ventura Veterans Home project.

11      13. CalVet, in conjunction with other responsible California state agencies, was in the process
12  of implementing a construction project to expand the kitchen facility at the Veterans Home in West Los
13  Angeles ("the West Los Angeles kitchen project").  The initial cost of the construction project was
14  estimated at $2 million, but increased to $3.9 million by March 2013.  A portion of the funding for the
15  construction project came from the United States government.

16      14. The United States Department of Energy ("DOE") was a department of the United States
17  government that managed the United States' nuclear infrastructure, administered the country's energy
18  policy, and funded scientific research.  The DOE operated DOE national laboratories, a collection of
19  federally-funded research centers throughout the United States, overseen for the purpose of advancing
20  science and technology to fulfill the DOE mission.

21      15. The Lawrence Berkeley National Laboratory ("LBNL") was a DOE national laboratory
22  located at the University of California, Berkeley ("UCB").  The DOE owned the LBNL buildings and
23  funded the operations of LBNL.  When new construction or renovation of existing buildings took place,
24  funds of the United States government were used to pay for the construction or renovation.

25      16. Through a contract known as "the prime contract" between the DOE and the University of
26  California Regents, UCB employees managed and operated the LBNL facilities.

27      17. As to some contracts to construct or renovate LBNL buildings, the DOE conducted the
28  process of soliciting and reviewing bids and awarding the contracts.  In doing so, the DOE contracting

INDICTMENT                                3

1    officers were required to act in accordance with the practices and procedures set forth in Federal

2    Acquisition Regulations and Department of Energy Acquisition Regulations.  Those regulations required

3    that contracting officers follow a purchasing system that utilized the best in commercial purchasing

4    practices and procedures, including, among other things, using effective competitive techniques,

5    acquiring quality products and services at fair and reasonable prices, maintaining the highest

6    professional and ethical standards, maximizing opportunities for small and minority-owned businesses,

7    and delivering on a timely basis the best value products and services necessary to accomplish the

8    purpose of the United States Government contract.

9        18. Pursuant to the provisions of the prime contract, the DOE delegated to UCB employees the

10   authority to engage in procurement for certain LBNL building construction and renovation contracts.

11   Pursuant to the prime contract, in such instances, UCB employees acted on behalf of DOE and solicited

12   and reviewed bids, and awarded contracts, in accordance with Federal Acquisition Regulations,

13   Department of Energy Acquisition Regulations, and practices and procedures approved by the DOE.  In

14   doing so, UCB employees were required to engage in a purchasing system that met the same standards

15   as those followed by DOE contracting officers, as described in paragraph 17, above.

16       19. LBNL Building 84 was a DOE-owned LBNL building that was scheduled for renovation

17   utilizing federal funds. The solicitation of bids, review of bids, and awarding of the contract was to be

18   conducted by UCB employees pursuant to the prime contract.

19

20   <u>COUNT ONE</u>:  18 U.S.C. § 371 – Conspiracy To Receive A Bribe and Reward By Agent of
21                            Organization Receiving Federal Funds

22       20. Paragraphs 1 and 2, and 10 through 13 of this Indictment are hereby re-alleged and
23   incorporated by reference as if set forth in full herein.

24       21. From a date unknown to the Grand Jury, but no later than February 2013, and continuing
25   through December 31, 2013, both dates being approximate and inclusive, in the Northern District of
26   California and elsewhere, the defendants

27                        ERIC WORTHEN and
28                 TAJ ARMON REID, a/k/a TAJ REID,

INDICTMENT                      4

did knowingly and intentionally conspire to corruptly solicit and demand for the benefit of themselves, and to corruptly accept and agree to accept, money from another person with the intent to be influenced and rewarded in connection with any business, transactions, and series of transactions of CalVet involving anything of value of $5,000 or more, in violation of Title 18, United States Code, Section 666(a)(1)(B).

THE CONSPIRACY AND ITS OBJECTS

22. With the understanding that Individual A was interested in obtaining development and construction contracts with public entities in California, WORTHEN and REID devised a scheme to use WORTHEN's position in the CalVet Homes Division to offer and provide Individual A an inside advantage and non-public information on two CalVet contracts. WORTHEN and REID agreed to do so in exchange for payment of money by Individual A.

23. In connection with the anticipated development and construction project at the Ventura Veterans Home property, WORTHEN and REID offered to Individual A that WORTHEN would use his position at CalVet to provide Individual A with non-public information about the project, place Individual A as the most qualified bidder when the contract for the project was awarded, and make sure that Individual A was awarded the contract. WORTHEN and REID accepted $10,000 from Individual A in exchange for delivery of inside information and the promise of an inside advantage on the Ventura Veterans Home project.

24. In connection with the planned kitchen construction project at the West Los Angeles Veterans Home, WORTHEN and REID offered to Individual A that WORTHEN would use his position at CalVet to provide Individual A with non-public information about the project and give Individual A an advantage in connection with bidding on the contract. WORTHEN and REID expected payment from Individual A in exchange for delivery of non-public information about the kitchen project and accepted $2,000 from Individual A upon delivery of such information.

INDICTMENT                                5

## OVERT ACTS

25. As part of the conspiracy and to carry out its objects, the defendants ERIC WORTHEN and TAJ ARMON REID, together with others known and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among others, in the Northern District of California and elsewhere.

a. On February 11, 2013, WORTHEN and REID met with Individual A in San Francisco and offered to provide consulting services to Individual A.

b. On March 13, 2013, WORTHEN and REID met with Individual A in San Francisco and proposed that Individual A put them on retainer. Individual A declined to do so.

c. During a telephone conversation on April 11, 2013, WORTHEN and REID discussed the anticipated development of the Ventura Veterans Home and agreed to discuss the development project with Individual A.

d. In a telephone conversation on April 11, 2013 with Individual A, WORTHEN told Individual A about the anticipated housing construction project at the Ventura Veterans Home property. In sum and substance, and among other things, WORTHEN represented to Individual A that he, WORTHEN, could influence the decision as to who won the construction contract and offered to place Individual A as the most qualified bidder for the contract.

e. On April 17, 2013, WORTHEN and REID met with Individual A in San Francisco. WORTHEN provided Individual A with documents, including internal CalVet emails regarding the Ventura Veterans Home project. WORTHEN and REID offered to provide Individual A with inside information about the development of the Ventura Home property and to make sure that Individual A won the contract. WORTHEN, REID, and Individual A agreed that in exchange, Individual A would pay WORTHEN and REID in phases for "deliverables" and a 15% share of Individual A's profits upon completion of the project. WORTHEN, REID, and Individual A agreed that Individual A would pay

INDICTMENT                                6

$10,000 for this first phase.

f.   On April 18, 2013, REID and Individual A met in San Francisco and REID accepted $10,000 in cash from Individual A.

g.   Later on April 18, 2013, WORTHEN and REID had a conversation during which REID told WORTHEN that he received the cash from Individual A.

h.   On April 22, 2013, WORTHEN and REID had a telephone conversation during which WORTHEN told REID about the "$3.9 million" kitchen construction project at the Veterans Home in West Los Angeles – the West Los Angeles kitchen project.  WORTHEN told REID that he knew what the request for construction bids was going to look like.  REID responded:  "Check that out.  We can make a little money off that, E."

i.   On April 26, 2013, WORTHEN had a conversation with Individual A during which they discussed the West Los Angeles kitchen project.  Individual A agreed to pay WORTHEN and REID for advance information on the project before the information was made public.

j.   On April 28, 2013, WORTHEN and REID had a telephone conversation during which WORTHEN told REID that after hours at work, he made copies of documents relating to the West Los Angeles kitchen project.  WORTHEN said he would convert the documents to a pdf document and email it to REID.

k.   On April 30, 2013, WORTHEN and REID had a telephone conversation during which WORTHEN told REID that Individual A had agreed to provide "2,000 a piece" when REID delivered the documents.

l.   On April 30, 2013, REID sent an email to an associate of Individual A with an attached document entitled "Kitchen Cabinet project.pdf."  The attached pdf included internal CalVet documents, memoranda, and an email relating to the construction of the West Los Angeles kitchen project.  The documents included copies of plans and specifications for the kitchen project that were not yet public.

INDICTMENT                                    7

m.  On May 2, 2013, WORTHEN and REID had a telephone conversation during which they agreed that they should have asked Individual A for $10,000 for the kitchen project information. They agreed to discuss the price further with Individual A.

n.  On May 8, 2013, REID met with Individual A in San Francisco. REID discussed his and WORTHEN's assessment of the value of the information about the West Los Angeles kitchen project that WORTHEN and REID had provided to Individual A. REID accepted $2,000 in cash from Individual A for the kitchen project information.

o.  On May 28, 2013, WORTHEN and REID had a telephone conversation during which they discussed the Ventura Veterans Home project. REID inquired whether the next phase was ready so that WORTHEN and REID could get more money from Individual A. WORTHEN said that the next phase was probably six to seven months out.

p.  On September 12, 2013, WORTHEN and Individual A had a telephone conversation during which WORTHEN provided Individual A with an update on the Ventura Veterans Home project.

q.  On October 8, 2013, REID and Individual A had a telephone conversation during which REID provided Individual A with an update on the status of the Ventura Veterans Home project.

r.  On December 31, 2013, WORTHEN and Individual A had a telephone conversation during which WORTHEN provided assurances to Individual A about the viability of the Ventura Veterans Home project.

All in violation of Title 18, United States Code, Section 371.

COUNT TWO:  18 U.S.C. § 666(a)(1)(B) – Receiving A Bribe and Reward By Agent of Organization Receiving Federal Funds
18 U.S.C. § 2 – Aiding and Abetting

26.  Paragraphs 1 and 2, 10 through 13, and 22 through 25 of this Indictment are hereby re-alleged and incorporated by reference as if set forth in full herein.

INDICTMENT                                              8

1    27. From a date unknown to the Grand Jury, but no later than February 2013, and continuing

2    through December 31, 2013, both dates being approximate and inclusive, in the Northern District of

3    California and elsewhere, the defendants

4                                    ERIC WORTHEN and
5                              TAJ ARMON REID, a/k/a TAJ REID,

6    did intentionally and corruptly solicit and demand for the benefit of themselves, and accept and agree to

7    accept, money from another person with the intent to be influenced and rewarded in connection with any

8    business, transactions, and series of transactions of CalVet involving a thing of value of $5,000 or
9
10   more, that is, the building of an additional facility for veterans on ten unimproved acres at the site of the

11   Veterans Home in Ventura ("the Ventura Veterans Home project").

12       All in violation of Title 18, United States Code, Section 666(a)(1)(B) and Section 2.

13

14   COUNT THREE:  18 U.S.C. § 666(a)(1)(B) – Receiving A Bribe and Reward By Agent of
                              Organization Receiving Federal Funds
15                   18 U.S.C. § 2 – Aiding and Abetting

16       28. Paragraphs 1 and 2, 10 through 13, and 22 through 25 of this Indictment are hereby re-
17
18   alleged and incorporated by reference as if set forth in full herein.

19       29. From a date unknown to the Grand Jury, but no later than February 2013, and continuing

20   through December 31, 2013, both dates being approximate and inclusive, in the Northern District of

21   California and elsewhere, the defendants

22                                    ERIC WORTHEN and
23                              TAJ ARMON REID, a/k/a TAJ REID,

24   did intentionally and corruptly solicit and demand for the benefit of themselves, and accept and agree to

25   accept, money from another person with the intent to be influenced and rewarded in connection with

26   business, transactions, and series of transactions of CalVet involving a thing of value of $5,000 or

27   more, that is, the construction project to expand the kitchen facility at the Veterans Home in West Los
28

INDICTMENT                                    9

1   Angeles ("the West Los Angeles kitchen project").

2       All in violation of Title 18, United States Code, Section 666(a)(1)(B) and Section 2.

3

4   COUNT FOUR:  18 U.S.C. § 371 – Conspiracy to Defraud the United States

5       30.  Paragraphs 3 through 6, 9, and 14 through 19 of this Indictment are hereby re-alleged and

6   incorporated by reference as if set forth in full herein.

7       31.  From at least July 17, 2013, and continuing through at least January 30, 2014, in the

8   Northern District of California and elsewhere, the defendants

9

10                          DERF BUTLER,
                         ANTON KALAFATI,
11                       CLIFTON BURCH, and
                          PETER MCKEAN,
12

13  and others known and unknown to the Grand Jury, did knowingly and intentionally conspire to defraud

14  the United States and an agency thereof, that is, the United States Department of Energy, and one or

15  more of the defendants carried out an act to effect the object of the conspiracy.

16                          THE SCHEME TO DEFRAUD

17

18      32.  Beginning no later than July 17, 2013 and continuing through at least January 30, 2014, the

19  defendants, and others known and unknown to the Grand Jury, knowingly and intentionally engaged in

20  an illegal scheme to obtain the contract with the DOE to renovate LBNL Building 84, and thereby obtain

21  United States government funds to pay for the renovation, by means designed to impair, obstruct, and

22  defeat the lawful function of the DOE in awarding construction contracts through a fair, honest, and

23  competitive process.

24      33.  Individual A represented to defendants BUTLER, KALAFATI, BURCH, and MCKEAN

25  that he was colluding with a DOE contracting officer who was responsible for reviewing bids for the

26  contract to renovate LBNL Building 84.  Individual A represented to the defendants that the contracting

27  officer had guaranteed the contract to Individual A outside the normal bid solicitation and review

28

INDICTMENT                                    10

process.  As part of the scheme to defraud, defendants BUTLER, KALAFATI, BURCH, and MCKEAN knowingly agreed to assist Individual A's scheme to obtain the LBNL Building 84 contract through collusion with the contracting officer.  The defendants entered into this agreement with each other and with Individual A in exchange for a promise by Individual A that they would receive either a financial reward or a financial benefit in the form of contracting work from Individual A once he was awarded the LBNL Building 84 renovation contract.

34.  As further part of the scheme to defraud and to assist Individual A in winning the contract to renovate LBNL Building 84, the defendants BUTLER, KALAFATI, BURCH, and MCKEAN agreed to impair, obstruct, and defeat DOE's contract bidding and award process by submitting, or participating in the submission of, fraudulent and non-competitive bids to perform the renovation of LBNL Building 84.  The defendants submitted bids to the DOE, or arranged for the submission of bids to the DOE, in amounts dictated by Individual A that were higher than the bid Individual A represented he submitted to the DOE for the LBNL Building 84 renovation contract.  The defendants submitted these bids knowing that they were not genuine bids.  The defendants submitted the bids to the DOE, or arranged for the submission of the bids to the DOE, in amounts higher than Individual A's bid for the sole purpose of artificially ensuring that Individual A's bid on the LBNL Building 84 renovation was the lowest bid.  In doing so, the defendants intended to undermine DOE's fair and competitive bidding process and to assist the DOE contracting officer whom they believed was colluding with Individual A to award the LBNL Building 84 renovation contract to Individual A.

OVERT ACTS

35.  As part of the conspiracy and to carry out its objects, the defendants, together with others known and unknown to the Grand Jury, committed or caused to be committed, the following overt acts, among others, in the Northern District of California and elsewhere.

a.  On July 18, 2013, BUTLER met with Individual A in San Francisco, California, and

INDICTMENT                                11

BUTLER agreed to locate contractors to submit bids for the DOE contract in amounts higher than Individual A's bid. BUTLER proposed that instead of Individual A paying the contractors for submitting the bids, Individual A could give the bidders sub-contracting work once Individual A won the contract. During the meeting, Individual A gave BUTLER $2,000 in cash.

      b.  On or about July 29, 2013, BUTLER emailed BURCH to arrange for BURCH to attend a meeting with BUTLER and Individual A.

      c.  On or about July 29, 2013, BUTLER emailed and texted KALAFATI to arrange for KALAFATI to attend a meeting with BUTLER and Individual A.

      d.  On July 30, 2013, Individual A met with BUTLER, KALAFATI, and BURCH in San Francisco. BUTLER, KALAFATI, and BURCH agreed that KALAFATI and BURCH would separately submit bids to DOE for the LBNL Building 84 renovation project in amounts dictated by Individual A and higher than Individual A's bid of $5.7 million. After KALAFATI and BURCH left the meeting, Individual A gave BUTLER $9,000 in cash.

      e.  On July 31, 2013, BUTLER and Individual A met and Individual A gave BUTLER an additional $4,000 in cash.

      f.  On August 14, 2013, BUTLER, KALAFATI, and Individual A had a telephone conversation during which BUTLER, KALAFATI, and Individual A discussed KALAFATI submitting a bid to DOE in the amount of $6.7 million.

      g.  On August 15, 2013, BUTLER had a telephone conversation with Individual A during which BUTLER told Individual A that BURCH would be submitting a bid of $7.1 million to DOE.

      h.  On or about August 19, 2013, KALAFATI mailed a letter via Federal Express to the DOE contracting officer at the US DOE Berkeley Site Office quoting a bid for B Side, Inc. to perform the renovation of LBNL Building 84 for $6,696,000.

INDICTMENT              12

1         i.    On or about August 26, 2013, BURCH mailed a letter via Federal Express to the DOE

2    contracting officer at the US DOE Berkeley Site Office quoting a bid for Empire Engineering &

3    Construction, Inc. to perform the renovation of LBNL Building 84 for $7,125,000.

4         j.    On September 5, 2013, BUTLER proposed that Individual A use MCKEAN as the

5    contract manager for the LBNL Building 84 renovation project.  Later the same day, BUTLER

6    introduced MCKEAN to Individual A.

7

8         k.  On September 30, 2013, BUTLER met with Individual A in San Francisco and asked for

9    an additional $15,000 from Individual A.  BUTLER also discussed the payment that he expected to

10   receive once Individual A was awarded the contract for the LBNL Building 84 renovation.

11        l.    On October 1, 2013, MCKEAN met with Individual A in San Francisco and agreed to

12   submit a bid on the LBNL Building 84 project in the amount of $6.2 million.  At the end of the meeting,

13   MCKEAN and Individual A spoke on the phone with BUTLER and discussed MCKEAN's agreement

14   to submit the $6.2 million bid.

15

16        m.  On October 3, 2013, MCKEAN, on behalf of Townsend Management, Inc., emailed a

17   letter addressed to the DOE contracting officer submitting a lump sum bid for $6,200,000 to perform the

18   LBNL Building 84 renovation.

19        n.  During a meeting between MCKEAN and Individual A on October 3, 2013 in San

20   Francisco, in which BUTLER participated by phone, MCKEAN and BUTLER agreed to recruit one

21   more bidder to submit a bid higher than Individual A's bid for the LBNL Building 84 project.

22

23        o.  During a phone conversation with Individual A on October 25, 2013, BUTLER said he

24   had arranged for another contractor to submit a bid in the amount of $6.3 million.

25        p.  On January 30, 2014, BUTLER, KALAFATI, BURCH, and MCKEAN met to discuss

26   the LBNL Building 84 contract.

27        All in violation of Title 18, United States Code, Section 371.

28

INDICTMENT                 13

COUNT FIVE:  18 U.S.C. § 1001(a)(2) – False Statement

36.  Paragraphs 3 through 6, 9, 14 through 19, and 32 through 35 of this Indictment are hereby re-alleged and incorporated by reference as if set forth in full herein.

37.  On or about March 26, 2014, in the Northern District of California, the defendant

DERF BUTLER,

in a matter within the executive branch of the Government of the United States, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Federal Bureau of Investigation and the United States Department of Energy, Office of Inspector General, by stating in sum and in substance during interviews with agents of the Federal Bureau of Investigation that he had never received money from Individual A, Individual A had never paid money to him, and he had no financial relationship with Individual A, when in fact, as BUTLER then knew, he had received cash payments from Individual A totaling $15,000, had requested an additional $15,000 from Individual A, and had multiple conversations with Individual A about the financial benefits BUTLER expected to receive once Individual A was awarded the DOE contract for the LBNL Building 84 renovation.

All in violation of Title 18, United States Code, Section 1001(a)(2).


COUNT SIX:  18 U.S.C. § 1001(a)(2) – False Statement

38.  Paragraphs 3 through 6, 9, 14 through 19, and 32 through 35 of this Indictment are hereby re-alleged and incorporated by reference as if set forth in full herein.

39.  On or about April 24, 2014, in the Northern District of California, the defendant

ANTON KALAFATI,

in a matter within the executive branch of the Government of the United States, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations in a matter

INDICTMENT                                        14

1  within the jurisdiction of the Federal Bureau of Investigation and the United States Department of

2  Energy, Office of Inspector General, by stating in sum and in substance during an interview with agents

3  of the United States Department of Energy, Office of Inspector General, that DERF BUTLER did not

4  give him a number to bid on the DOE contract for the LBNL Building 84 renovation, that BUTLER told

5  him to come up with an estimate based on the plans for the Building 84 renovation, and that he and

6  another individual came up with the bid amount based only on the Building 84 renovation plans, when

7  in fact, as KALAFATI then knew, he used the number provided by BUTLER and Individual A when he

8  submitted B Side, Inc.'s bid of $6,696,000 for the Building 84 renovation to the DOE contracting officer

9  and that number was not based on the renovation plans.

10      All in violation of Title 18, United States Code, Section 1001(a)(2).

COUNT SEVEN:  18 U.S.C. § 1001(a)(2) – False Statement

40.  Paragraphs 3 through 6, 9, 14 through 19, and 32 through 35 of this Indictment are hereby re-alleged and incorporated by reference as if set forth in full herein.

41.  On or about April 24, 2014, in the Northern District of California, the defendant

ANTON KALAFATI,

in a matter within the executive branch of the Government of the United States, did knowingly and

willfully make materially false, fictitious, and fraudulent statements and representations in a matter

within the jurisdiction of the Federal Bureau of Investigation and the United States Department of

Energy, Office of Inspector General, by stating in a written statement that he provided to agents of the

United States Department of Energy, Office of Inspector General, that DERF BUTLER "did not give me

a number that I should come in at" in submitting the bid, that "I took the plans back to the office and we

did a rough estimate with my accountant based on the square footage and submitted the quote to Derf

via email," and that "my estimator created the bid amount after doing a plan take off," when in fact, as

INDICTMENT                        15

1  KALAFATI then knew, he used the number provided by BUTLER and Individual A when he submitted

2  B Side, Inc.'s bid of $6,696,000 for the Building 84 renovation to the DOE contracting officer and that

3  number was not based on the renovation plans.

4      All in violation of Title 18, United States Code, Section 1001(a)(2).

5

6

7  COUNT EIGHT:  18 U.S.C. § 371 – Conspiracy to Defraud the United States

8      42. Paragraphs 1 and 2, 7 through 9, and 14 through 19 of this Indictment are hereby re-alleged

9  and incorporated by reference as if set forth in full herein.

10      43. From at least September 9, 2013, and continuing through at least December 31, 2013, in the

11  Northern District of California and elsewhere, the defendants

12                    TAJ ARMON REID, a/k/a TAJ REID,
13                           LEN TURNER, and
14                           LANCE TURNER,

15  and others known and unknown to the Grand Jury, did knowingly and intentionally conspire to defraud

16  the United States, and an agency thereof, that is, the United States Department of Energy, and one or

17  more of the defendants carried out an act to effect the object of the conspiracy.

18                           THE SCHEME TO DEFRAUD

19      44. Beginning no later than September 9, 2013, and continuing through at least December 31,

20  2013, the defendants and others known and unknown to the Grand Jury, knowingly and intentionally

21  engaged in an illegal scheme to obtain the contract with the DOE to renovate LBNL Building 84, and

22  thereby obtain United States government funds to pay for the renovation, by means designed to impair,

23  obstruct, and defeat the lawful function of the DOE in awarding construction contracts through a fair,

24  honest, and competitive process.

25

26      45. Individual A represented to defendants REID, LEN TURNER, and LANCE TURNER

27  that he was colluding with a DOE contracting officer who was responsible for reviewing bids for the

28

INDICTMENT                              16

1   contract to renovate LBNL Building 84.  Individual A represented to the defendants that the contracting

2   officer had guaranteed the contract to Individual A outside the normal bid solicitation and review

3   process.  As part of the scheme to defraud, defendants REID, LEN TURNER, and LANCE TURNER

4   knowingly agreed to assist Individual A's scheme to obtain the LBNL Building 84 contract through

5   collusion with the contracting officer.  The defendants entered into this agreement with each other and

6   with Individual A in exchange for a promise by Individual A that they would receive either a financial

7   reward or a financial benefit in the form of contracting work from Individual A once he was awarded the

8   LBNL Building 84 renovation contract.

9

10   46.  As further part of the scheme to defraud and to assist Individual A in winning the contract to

11   renovate LBNL Building 84, the defendants REID, LEN TURNER, and LANCE TURNER agreed to

12   impair, obstruct, and defeat DOE's contract bidding and award process by submitting, or participating in

13   the submission of, a fraudulent and non-competitive bid from Turner Group Construction to perform the

14   renovation of LBNL Building 84.  The defendants submitted the bid to the DOE, or arranged for the

15

16   submission of bid to the DOE, in an amount dictated by Individual A that was higher than the bid

17   Individual A represented he submitted to the DOE for the LBNL Building 84 renovation contract.  The

18   defendants submitted this bid knowing that it was not a genuine bid.  The defendants submitted the

19   Turner Group Construction bid to the DOE, or arranged for the submission of the bid to the DOE, in an

20   amount higher than Individual A's bid for the sole purpose of artificially ensuring that Individual A's

21

22   bid on the LBNL Building 84 renovation was the lowest bid.  In doing so, the defendants intended to

23   undermine DOE's fair and competitive bidding process and to assist the DOE contracting officer who

24   was colluding with Individual A in awarding the LBNL Building 84 renovation contract to Individual A.

25

### OVERT ACTS

26   47.  As part of the conspiracy and to carry out its objects, the defendants, together with others

27   known and unknown to the Grand Jury, committed or caused to be committed, the following overt acts,

28

INDICTMENT                                17

among others, in the Northern District of California and elsewhere.

       a.   On September 10, 2013, REID and Individual A had a telephone conversation during which Individual A explained that in order to secure a construction contract with DOE, he needed a contractor to submit a "phony bid" in the amount of $6.15 million, an amount that was higher than the bid that Individual A submitted to DOE.

       b.   On September 11, 2013, Individual A had a telephone conversation with REID and LEN TURNER during which LEN TURNER agreed to submit a bid in the amount of $6.15 million to DOE for the LBNL contract.

       c.   On September 16, 2013, Individual A met with REID, LEN TURNER, and LANCE TURNER in San Francisco and discussed the $6.15 million bid that Turner Group Construction would be submitting to DOE for the LBNL Building 84 renovation contract.

       d.   On September 17, 2013, REID sent an email to an individual affiliated with LEN TURNER and LANCE TURNER instructing that individual to email the $6.15 million bid by Turner Group Construction to the DOE contracting officer.

       e.   On September 18, 2013, the individual affiliated with LEN TURNER and LANCE TURNER emailed to the DOE contracting officer a letter with a bid by Turner Group Construction to perform the renovation of LBNL Building 84 for the lump sum of $6,150,000.

       f.   On October 3, 2013, Individual A met with LEN TURNER and LANCE TURNER in San Francisco and discussed Individual A's arrangement with the DOE contracting officer to win the LBNL Building 84 contract.

       g.   On October 6, 2013, Individual A had a telephone conversation with REID during which REID discussed the bid submitted to the DOE by Turner Group Construction, REID's role in facilitating the bid, and REID's expectation of payment for his role.

       h.   On October 8, 2013, Individual A had a telephone conversation with REID during which

REID discussed his expectation of payment for his role in facilitating the submission of the Turner Construction Group bid to the DOE.  REID also provided Individual A with an update on the status of the CalVet Ventura Veterans Home project.

      i.    On October 19, 2013, Individual A had a telephone conversation with REID during which REID discussed his expectation of payment for his role in the submission of the bid to DOE. REID also told Individual A that he and ERIC WORTHEN had tried to get LEN TURNER to do the CalVet West Los Angeles kitchen project.

      All in violation of Title 18, United States Code, Section 371.

FORFEITURE ALLEGATION:      18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)

      48. All of the allegations contained in this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

      49. Upon a conviction for any of the offenses alleged in Counts One through Three of this Indictment, the defendants

ERIC WORTHEN and<br>
TAJ ARMON REID, a/k/a TAJ REID,

shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) all property constituting, and derived from, proceeds the defendant obtained directly and indirectly, as the result of these violations including, but not limited to, a forfeiture money judgment.

      50. If any of the aforementioned property, as a result of any act or omission of the defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third person;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

INDICTMENT                  19

e.   has been commingled with other property that cannot be divided without difficulty;

any and all interest the defendant has in other property shall be vested in the United States and forfeited

to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

All in violation of Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States

Code, Section 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED:                                                    A TRUE BILL.

4/6/17

_____

FOREPERSON

BRIAN J. STRETCH
United States Attorney

_____

BARBARA J. VALLIERE
Chief, Criminal Division

(Approved as to form:  _____ )

AUSA Susan Badger

INDICTMENT                                    20