RIORDAN & HORGAN
Dennis P. Riordan (State Bar No. 69320)
dennis@riordan-horgan.com
Donald M. Horgan (State Bar No. 121547)
don@riordan-horgan.com
1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
Telephone: (415) 431-3475

Attorneys for Defendant
LEN TURNER

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>LEN TURNER,<br><br>                    Defendant. | Case No. 17-cr-0175-CRB<br><br><br>**Date:** July 31, 2019<br>**Time:** 1:30 p.m.<br>**Court:** Honorable Charles R. Breyer |

### EXHIBIT 1 TO DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE ENTRAPMENT DEFENSE

Pages 1 - 55

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER

```
UNITED STATES OF AMERICA,        )
                                 )
              Plaintiff,          )
                                 )
     vs.                          )   No. CR 17-0175 CRB
                                 )
LEN TURNER and LANCE TURNER,      )
                                 )   San Francisco, California
              Defendants.         )   Tuesday
                                 )   August 28, 2018
_____  )   9:00 a.m.
```

**EXCERPT OF JURY TRIAL PROCEEDINGS**
**JURY INSTRUCTION CONFERENCE**

**APPEARANCES:**

```
For Plaintiff:          ALEX TSE
                        Acting United States Attorney
                        450 Golden Gate Avenue
                        San Francisco, California  94102
               BY:  KIMBERLY HOPKINS
                    ANDREW DAWSON
                    ASSISTANT UNITED STATES ATTORNEYS


For Defendant           RIORDAN & HORGAN
Len Turner:             523 Octavia Street
                        San Francisco, California 94102
               BY:  DENNIS RIORDAN, ESQ.


For Defendant           BOERSCH SHAPIRO, LLP
Lance Turner:           1611 Telegraph Avenue
                        Suite 806
                        Oakland, California 94612
               BY:  MARTHA BOERSCH, ESQ.
```

*Reported By:    Debra L. Pas, CSR 11916, CRR, RMR, RPR*
    Official Reporter - US District Court
    Computerized Transcription By Eclipse

```
1   Tuesday - August 28, 2018                        1:29 p.m.

2                     P R O C E E D I N G S

3                          ---oOo---

4        (Prior proceedings held herein, reported

5         but not transcribed.)

6            *         *         *         *         *

7        THE COURT:  Okay.  Let the record show the jury has

8   retired.

9        So why don't we go through at least some of the

10  instructions and what needs to be -- needs to be discussed

11  further.  Let me give you a list of those instructions that I

12  intend to give and if you have some comment on them, please

13  speak up.

14       Okay.  I am now referring to model instructions out of the

15  2010 Ninth Circuit criminal book.

16       MR. RIORDAN:  Your Honor, I confess we're at a

17  disadvantage because we don't have the model instructions in

18  front of us.

19       THE COURT:  Pardon?

20       (Whereupon said book was tendered to counsel.)

21       MR. RIORDAN:  Okay, thank you.

22       THE COURT:  Okay.  Are we ready?

23       MR. RIORDAN:  Yes, your Honor.

24       THE COURT:  3.1, which I will modify to include some

25  language of implicit -- I mean, unconscious bias.
```

PROCEEDINGS

```
 1        3.2.

 2        3.3, as it applies to --

 3              MR. DAWSON:  Can we see it?

 4              MR. RIORDAN:  I'm sorry.

 5              THE COURT:  3.3, Defendant's Decision Not to Testify.

 6   Let's see.  Len -- who didn't testify?

 7              MS. BOERSCH:  Lance.

 8              THE COURT:  Lance did not testify.

 9        And 3.4, Len did testify.

10              MS. BOERSCH:  Your Honor, on 3.3 can I have some time

11   to think about whether I want that read or not read for Lance?

12              THE COURT:  Well, yeah.  Five minutes or so to figure

13   out -- well, I mean, this is -- does this come as a shock to

14   you, Ms. Boersch?

15              MS. BOERSCH:  No, no, no.  I just --

16              THE COURT:  I want to do the instructions now so at

17   the end of this proceeding today, I want to know what your

18   position is.

19              MS. BOERSCH:  That's fine.

20              THE COURT:  Okay.  All right.  So anyway, this is

21   what I intend to do.  Okay.  I will I give 3.3, 3.4, 3.5, 3.6,

22   3.7.

23        3.8 I modified because I eliminate the definition of

24   circumstantial evidence, since nobody understands it.

25        3.9.
```

1          Now, let's go to 3.10.  I don't know that I would give

2     that unless somebody thinks that I should.  That's Activities

3     Not Charged.  There is nothing else -- there has been no

4     discussion of anything else.

5          **MR. RIORDAN:**  Well, there has been intimations by the

6     Government of some pay-for-play or, you know, keeping

7     politicians happy by paying them.  So I think --

8          **THE COURT:**  I'll give it, okay.  Do you want to give

9     it?

10         **MR. DAWSON:**  It is directly relevant to the

11    predisposition question.  So I don't know if it's irrelevant to

12    the charge in this case, but I have no objection to the

13    instruction.

14         **THE COURT:**  Okay.  Well, the Defense is requesting it

15    and I will give it.

16         3.12.  Let's see.  I think I will give 3.12.

17         (Brief pause.)

18         **THE COURT:**  Do I give 3.16?  I don't think I do if I

19    give --

20         **MR. DAWSON:**  I think it's defined in the --

21         **THE COURT:**  It's defined in the Conspiracy charge

22    anyway, so I think it's just redundant.  I always try not to

23    give more than instruction on, so I'm not going to give it

24    unless somebody convinces me I should.

25         Let me move on to 4.1.  And I think I have to modify that

1    as to Len Turner; right?  Is there -- there's nothing really --

2            MR. RIORDAN:  Well, I'm sorry, your Honor.  In terms

3    of modifying --

4            THE COURT:  4.1.  Lance didn't make any statement to

5    the cops.

6            MS. BOERSCH:  Lance has never been interviewed, no.

7            MR. RIORDAN:  I believe the Government is claiming

8    that there's statements by Lance in the recordings.

9            MR. DAWSON:  In the recordings there are statements.

10           THE COURT:  Well --

11           MS. BOERSCH:  But I think --

12           THE COURT:  -- that's different.

13           MR. DAWSON:  Okay.

14           THE COURT:  I mean, the way I look at it, this is a

15    very different thing.  This isn't like -- like, oh, I mean,

16    every case would have this where a Defendant says something in

17    the course of a case.  Otherwise, you wouldn't have any

18    evidence.

19        I mean, I guess you could have a -- something in which the

20    Defendant says nothing, ostensibly commits the crime without

21    making an utterance, but that's not what this is referring to.

22        This is referring to a statement.  I think it refers to a

23    statement that purportedly the Defendant made to the police.

24           MS. BOERSCH:  To law enforcement, I think so.

25           MR. DAWSON:  That's right.  That's right, your Honor.

1          THE COURT:  I would give that.  But there's only one.

2    So I would caution, caution.  I would modify it to that.  Okay.

3          MR. RIORDAN:  Your Honor.

4          THE COURT:  Yes.

5          MR. RIORDAN:  What are you thinking of in terms of a

6    modification?

7          THE COURT:  Okay.  Good question.

8          MR. RIORDAN:  Because it's --

9          THE COURT:  Well, I could say:  You've heard

10   testimony that the Defendant, Lance Turner, made a statement to

11   law enforcement --

12         MS. BOERSCH:  Len Turner.

13         THE COURT:  I'm sorry.  I beg your pardon.  ...that

14   Len Turner made a statement to law enforcement or to --

15         MR. RIORDAN:  Okay.

16         THE COURT:  That's what I would say.  Okay.

17      4.10, Government Use of Agents or Informants.

18      Then we go -- I'm not putting this in the order in which I

19   would necessarily give it, okay?

20         MR. RIORDAN:  Your Honor, may we --

21         THE COURT:  I just want to -- let me just see -- I

22   have to deal with -- here are some of the issues I have to deal

23   with.  I have to deal with the entrapment.  I have to deal

24   with, obviously, the conspiracy, the conspiracy charge itself

25   and maybe some other things.  So let's get to it.

PROCEEDINGS

1     **MR. RIORDAN:** Well, I just had a point about --

2     **THE COURT:** Go ahead.

3     **MR. RIORDAN:** -- 4.9.

4     **THE COURT:** Okay, 4.9.

5     **MS. HOPKINS:** Your Honor, the Government would object

6 to that.

7     **MR. RIORDAN:** I haven't said what it is yet.

8     **THE COURT:** I'm not there yet.

9   Testimony of a Witness Involving Special Circumstances,

10 Immunity, Benefits, Accomplice, Plea.

11     **MS. BOERSCH:** We had proposed one in our pretrial

12 filings --

13     **THE COURT:** Who is it? First of all, who is it?

14     **MS. BOERSCH:** Myles.

15     **MR. RIORDAN:** Myles.

16     **MS. BOERSCH:** The benefits he's received, the million

17 dollars in payments from the FBI.

18     **MR. DAWSON:** I mean, a Special Agent who's paid over

19 ten years. That's not a benefit.

20     **MS. HOPKINS:** He's a contractor.

21     **MR. RIORDAN:** The second --

22     **THE COURT:** Let me read it. Let me read it. Let me

23 read it.

24     **MR. RIORDAN:** We're only asking for a particular

25 paragraph, your Honor, which is like the second one in

PROCEEDINGS

1    brackets, Compensation.

2         (Brief pause.)

3              THE COURT:  Well, of course, it goes with the greater

4    caution and so forth.

5              MR. RIORDAN:  Right.  I mean, of the four paragraphs,

6    right.  And then, yes, it would be the ultimate --

7              THE COURT:  Of course, it would be -- the greater

8    caution is the accomplice test.  He's not an accomplice.

9              MR. RIORDAN:  Well, it's not an accomplice

10   necessarily.

11             THE COURT:  Read the comment.  That's what it's

12   directed towards.

13             MR. RIORDAN:  It's directed to anybody who gives

14   testimony, immunity or --

15             THE COURT:  No, wait.  It's directed to what?

16             MR. RIORDAN:  This instruction would apply to anyone

17   who gets immunity or benefits regardless of whether they were

18   an accomplice.

19             THE COURT:  He doesn't get immunity.  That's not an

20   issue here.

21             MR. RIORDAN:  No.

22             THE COURT:  Okay.  So you say get benefits.  You say

23   the benefit he got, he got paid.

24        Okay.  Now, tell me why is that different from law

25   enforcement?

1          **MR. RIORDAN:**  Because unlike -- he is not an employee

2     of the FBI --

3          **THE COURT:**  I know, but why is it different?

4          **MR. RIORDAN:**  And he's paid specifically for his work

5     as an undercover operative --

6          **THE COURT:**  They hired somebody to do this and is he

7     any different from somebody who would be an employee who is

8     hired to do it?

9          There may be different things that one could say about it.

10    You could say -- you can -- going back to how do you judge the

11    credibility of witnesses?  And this is a credibility question.

12    That's all it is.  It's a credibility question.  And it says,

13    if I can find it -- yeah.

14         It says:  The witness's interest in the outcome.  The

15    witness's -- any other factors of believability.  That's fine.

16         **MR. RIORDAN:**  Okay.

17         **THE COURT:**  I don't know that -- the only question

18    is, with a -- with an informant, is an informant a paid

19    informant to be -- is a jury to be cautioned about a paid

20    informant that the jury must consider his testimony -- I'm

21    trying to get it down, his testimony with greater caution than

22    that of other witnesses.  That's the issue.

23         Do you have a case that says that?

24         **MS. BOERSCH:**  I think we cited one in our pretrial

25    filings, but I don't have it with me.

PROCEEDINGS

1          THE COURT:  Okay.  You think it's in your brief?

2     I'll go back and look at the brief.

3          MS. BOERSCH:  In our -- the Jury Instructions we

4     submitted pretrial, yeah.  And I'm not positive there is a

5     case.  I have to say, it may just be that we cited the model

6     instruction.

7          THE COURT:  Hold on.

8       (Brief pause.)

9          THE COURT:  Well, I'm now reading the commentary to

10    the instruction, because this is exactly what I faced in the

11    Taj Reid case.  And you say:

12          "Defendants previously requested this

13          instruction.  The Court declined to give it in Taj

14          Reid.  However, the instruction is fully supported by

15          the law and is potentially reversible error to refuse

16          to provide the instruction.  The Ninth Circuit Jury

17          Instruction Committee recommends giving this

18          instruction whenever it is requested."

19       "Whenever it is requested"?  That's what the committee

20    said?  Like, in a -- in a case where they didn't even have

21    somebody?  What a ridiculous statement that is.

22       Okay.  Moving ahead.  I mean, it really is just absurd.

23    If that's the case, there is very little to say.  One says, oh,

24    Ninth Circuit says give it whenever they ask.  You've asked, so

25    I should give it.  But I'm not -- I'm going to do a little bit

PROCEEDINGS

 1    of an analysis, if you don't mind.

 2              **MR. RIORDAN:**  We submit, your Honor.

 3              **THE COURT:**  Then it says:

 4              "The Ninth Circuit and most other Circuits that

 5         have considered the question have held that this

 6         instruction must be given when requested by the

 7         Defense counsel, at least where the testimony of an

 8         accomplice is substantially uncorroborated."

 9         Well, that's not this case at all.  Because, number one, I

10    don't know that he's an accomplice as a matter of law.  And,

11    number two, we have tape recordings that have been played

12    ad nauseam that either corroborates his testimony or it

13    doesn't.  So that's not applicable.

14              "The use of informers, et cetera, et cetera,

15         et cetera, may raise serious questions of credibility.

16         To the extent that they do, a Defendant is entitled to

17         a broad latitude to probe credibility by cross

18         examination" -- I think I've done that -- "and to have

19         the issues submitted to the jury with careful

20         instructions."

21         Well, that's not a bad idea.  I think all instructions

22    ought to be careful.

23         Then it says:

24              "The Fourth Circuit stated the jury needs to be

25         instructed to scrutinize informant testimony more

 1          carefully than other witnesses, even biased witnesses,

 2          because of the potential for perjury borne out of self

 3          interest."

 4          Well, that actually does strike a slightly responsive cord

 5     in me.  Because this person is not a police officer.  He is a

 6     paid informant.  He is somebody who has been retained by the

 7     police department or law enforcement to furnish testimony,

 8     conduct investigations and so forth.

 9          So he falls somewhat out of the general ambit of what it

10     is that law enforcement officers are trained and committed and

11     pledged and take oaths to do.  He didn't do any of those

12     things.  He may have had some training, but he hasn't taken an

13     oath to always tell the truth.  I mean, he doesn't take a law

14     enforcement oath, whatever that is, when they become law

15     enforcements agents.

16          So I think there is that distinction.  Well, you know,

17     maybe I should give it?

18             **MS. HOPKINS:**  Your Honor, I think as far as that

19     Fourth Circuit case, that's a case that involves -- it's a drug

20     case where the informant was paid for providing information to

21     the police about the Defendant.

22          In this case we have a Confidential Human Source who was a

23     contractor for the FBI who was operating under Service

24     Agreements.

25             **THE COURT:**  Well, I think the difference is -- I

1   mean, this is clearly a sting operation, not a, oh, we -- we

2   got this guy on one thing or another.

3       I have a sense that an argument can be made that you would

4   just simply distinguish law enforcement officers on the one

5   hand from paid informants on the other.

6       I am leaning towards giving the cautionary instruction,

7   but I may modify it.  I may modify it.  I may just -- I may

8   modify it.

9       So I'll think about it a bit more and tell you by the end

10  of today what I'm going to do.

11          **MS. HOPKINS:**  Your Honor, the Government's position

12  would just be that the normal credibility instruction for

13  witnesses would suffice in this situation.

14          **THE COURT:**  I mean, the question really is is

15  whether -- is whether his testimony should be viewed with

16  greater caution than that of other witnesses.

17      But I must tell you, his testimony was -- his testimony

18  was essentially, and I think it would be argued, it's all in

19  the tapes.  You know, it's not what he -- he was permitted to

20  say what his state of mind was.  He was permitted to say what

21  he thought the other people were -- what their meaning was.

22      And to that extent that kind of testimony is subject to

23  credibility, an attack on credibility.  You know, he said he

24  thought this or he said -- no, no, he didn't, dah, dah, dah.

25      Okay.  So there is something to attack.  It's not like he

1    got on and simply verified the tapes.  Nevertheless --

2            MR. RIORDAN:  Can I just make one point, your Honor?

3            THE COURT:  Go right ahead.

4            MR. RIORDAN:  The Service Agreements demonstrate that

5    the FBI has gone to very, very clear lengths to make sure that

6    William Myles is not ever considered to be an employee of law

7    enforcement.  And that's the distinction.

8            THE COURT:  Well, that is a distinction.  And I

9    appreciate that distinction, but the consequence of that

10   distinction is whether or not he, therefore, should be -- that

11   you should view his testimony with greater caution.

12       Yes.

13           MS. HOPKINS:  Your Honor, one more point.

14       In the instruction it talks about benefit compensation or

15   favored treatment in connection with this case.  William

16   testified that he was paid regardless of whether he worked on

17   this case or the result and that payment was not tied to this

18   case.  He was also working numerous other cases at the same

19   time that he was working this case.  So the instruction is

20   regarding being paid in connection with this case.

21           THE COURT:  Well, and I think the answer to that is

22   you're right and you're not right.

23       You're right in the sense that there is no evidence to

24   suggest that he was paid in accordance with some success rate,

25   achieving some conviction and so forth.  So in the narrow

1    definition or the context of this case you're right.

2        But, of course, his job was to -- was to ferret out crime

3    if it -- if it presented itself.  And, therefore, there is some

4    margin that one would look at his performance as to whether it

5    was successful or not in viewing his ongoing compensation.  If

6    he screwed up this investigation, then, you know --

7            MR. RIORDAN:  That's an explicit provision of his

8    agreement; that the FBI could cut off his pay any time they

9    think it's not worth the money they are paying him.  That's in

10   evidence.

11           THE COURT:  Yeah, but I -- I don't disagree with

12   that.  I think I'm going to give it.

13       I just have to say that it's a -- it's -- this case, as

14   it's been presented to me, doesn't seem to be a contest of the

15   credibility of the paid informant.  It just doesn't seem.

16   There are cases that depend on that all the time.  This isn't

17   one of them.

18       Nevertheless, there -- he was allowed to give testimony

19   about what he intended.  He was allowed -- over objection by

20   the way.  He was allowed to give testimony as to what did he --

21   what was his understanding, and I think that that's fair game

22   to comment on, if it -- if it's even going to be alluded to by

23   the Government.  I have no idea.

24       Okay.  So I'll probably give that in some form.  Okay.  So

25   there we go.

1        Now we're down to what?  We're down to -- I think we ought
2    to talk about conspiracy and then we'll talk about entrapment.
3    Okay?
4        Conspiracy.  Well, okay.  So we start with 8.21,
5    Conspiracy to Defraud the United States.  Now, let's -- let's
6    get some other words clear.  I don't think I should say
7    Count Eight because it sounds like he did seven other things.
8        The Defendant is charged, I could say in the indictment --
9    because I also give an instruction the indictment is not
10   evidence -- conspiring to defraud the United States by
11   obstructing the lawful functions of, and I guess it's going to
12   be Department of Energy?
13            **MS. HOPKINS:**  Yes.
14            **THE COURT:**  By deceitful or dishonest means, dah,
15   dah, dah, dah, dah, dah, first beginning on whatever date is in
16   the indictment, ending on or about the date whatever is in the
17   indictment there was an agreement between two or more persons
18   to defraud the United States by obstructing the lawful
19   functions of, and again, Department of Energy, by deceitful and
20   dishonest means as charged in the indictment.
21        Okay.  I could eliminate the words "as charged in the
22   indictment" or not.  It doesn't mean anything.
23            **MR. RIORDAN:**  Well --
24            **THE COURT:**  I'm not reading the indictment.  And I'll
25   get to what you want me --

1          **MR. RIORDAN:**  I'm not suggesting that you read the

2    indictment in it's totality, your Honor.

3          **THE COURT:**  Wait, wait, wait, wait.  Well, are a

4    minute.  Hear me out and then you can -- you can say something.

5          **MR. RIORDAN:**  Okay.

6          **THE COURT:**  Okay.  Let's add, deceitful or dishonest

7    means as charged in the indictment, first.

8          Second, that the Defendant became a member of the

9    conspiracy knowing of at least one of its objects and intended

10   to help accomplish it.

11         And, third, one of the members of the conspiracy performed

12   at least one overt act for the purpose -- oh, of carrying out

13   the conspiracy with all of you agreeing on a particular overt

14   act that you find he committed.  The agreement to defraud is an

15   agreement to deceive or cheat.  And the definition of a

16   conspiracy, Dah, dah, dah, dah, dah.

17         So the issues that are raised, as I see it, are two issues

18   that are peculiar to this case.

19         Number one, is Department of Energy as distinct from any

20   other entity.  That is to say, does the Government have the

21   burden of establishing that the Defendant knew, and I'll add

22   some words, or should have known that the object of the

23   conspiracy was to cheat the federal government.

24         Okay.  Now, let's start with -- let's start to see whether

25   we have agreement.  Do we have agreement that the Government

1    has that obligation in this case?

2        I turn to the Government.

3            **MR. DAWSON:**  Yes, your Honor, as you just stated it.

4            **THE COURT:**  Okay.  Okay.  So it's an element of the

5    crime that the -- that the Government show that the Defendant

6    knew or should have known, reasonably should have known?  I

7    have to work on the words.  That the -- that this was a scheme

8    to cheat the federal government.

9            **MR. RIORDAN:**  Your Honor, the Department of Energy is

10   what is alleged in the indictment.

11           **THE COURT:**  All right.  Forget the federal

12   government.  I don't even have to talk about the federal

13   government.  I have to talk about the Department of Energy.

14   Because however you look at Lawrence laboratory, it's not the

15   federal government.  University of California is not the

16   federal government.

17       Okay.  So we're talking about the Department of Energy.

18   So is it the view of the Government that I substitute in the

19   words that -- I don't have the exact words, but the words "to

20   cheat or defraud the Department of Energy"?

21           **MR. DAWSON:**  I think it's already there, your Honor.

22           **MS. HOPKINS:**  It's -- it's --

23           **THE COURT:**  Specific government agency, there it is.

24           **MR. DAWSON:**  10 to 11.

25           **THE COURT:**  Okay.  "Lawful functions of the

PROCEEDINGS

 1  Department of Energy."

 2       So I don't need to say anything more about that, do I?

 3            **MS. BOERSCH:**  I think the Defendant has to know and

 4  intend to defraud the Department of Energy.  Not just know, but

 5  intend.  Under *Tanner* and *Mendez* and *Licciardi*.

 6            **THE COURT:**  Well, let me think about that.

 7       So I knew I was cheating the -- I knew that what I was

 8  going to do was defraud the Department of Energy, but I really

 9  didn't want to defraud them.  What does that mean?

10       I didn't really intend to hurt them, but I knew -- I

11  didn't intend to cheat them, but I knew I was cheating them.

12            **MS. BOERSCH:**  Can you restate what you were going to

13  say?

14            **THE COURT:**  I think I just leave it at that.

15            "An agreement between two or more persons to

16       defraud the United States by obstructing the lawful

17       functions of the Department of Energy by deceitful or

18       dishonest means as charged in the indictment."

19            **MS. BOERSCH:**  Okay.  And then the second paragraph

20  speaks about knowledge and intent, I think.

21            **MR. RIORDAN:**  Yes.

22            **MR. DAWSON:**  Yes.

23            **MS. BOERSCH:**  So that covers it.

24       The second --

25            **THE COURT:**  What?

PROCEEDINGS

1          MR. RIORDAN:  After "second," the word "second."  The

2    third paragraph.

3          MS. BOERSCH:  This, right (indicating)?

4          MR. DAWSON:  Can you turn it a little bit more?

5          MS. BOERSCH:  Oh, sorry.

6          THE COURT:  What, what words are we all looking at?

7    You're looking at some words.  I'm looking at some words.

8          MS. BOERSCH:  I'm saying the second element in the

9    model form uses both the words "knowledge" and "intent."  So I

10   think that second element takes care of the issue that I had.

11         MR. RIORDAN:  Following the word "second."  There is

12   a paragraph that begins "second."

13         THE COURT:  Read it to me.

14         MR. RIORDAN:  (As read)

15         "Second, the Defendant became a member of the

16         conspiracy knowing of at least one of its objects and

17         intending to help accomplish it."

18         THE COURT:  Yeah.  Okay.

19         MR. RIORDAN:  Good.  Okay.

20         THE COURT:  There we are.  So I'm now finished with

21   the Department of Energy.

22        Now I get to another problem, which is the term "sole

23   purpose" in the indictment.  Have I got that right?

24         MR. RIORDAN:  Yes, that is the term in the

25   indictment.

PROCEEDINGS

```
 1            THE COURT:  Pardon?

 2            MR. RIORDAN:  That is the word used in the

 3   indictment.

 4            THE COURT:  That's right.  That's the word.

 5       So Count Eight.  Count Eight says...

 6            MR. RIORDAN:  Paragraph 44.

 7       (Brief pause.)

 8            THE COURT:  I thought -- it's not Paragraph 44.

 9            MS. BOERSCH:  I think it's 46.

10            MR. RIORDAN:  I apologize, your Honor.

11            THE COURT:  It is 46.

12            MR. RIORDAN:  I am wrong.  It's 46.

13            THE COURT:  As long as you confess error.

14            MR. RIORDAN:  Yes.  Lines 18 to 24 I think are the

15   relevant lines.

16            THE COURT:  Yes.

17            "The Defendant submitted the Turner Group

18       Construction bid to the DOE or arranged for the

19       submission of a bid to the DOE in an amount higher

20       than individual A's bid for the sole purpose of

21       artificially ensuring that individual A's bid was the

22       lowest bid."

23       Okay.  And that goes where?

24            MR. DAWSON:  It goes nowhere, your Honor.

25            THE COURT:  It goes nowhere?  Okay.
```

 1           Go ahead, Mr. Dawson.  I think I have teed it up.

 2           **MR. DAWSON:**  The Defense position appears to be that

 3    based on allegations at the end of a five paragraph count, the

 4    Government can somehow transform the elements of the offense by

 5    identifying a mental state different from what the offense

 6    actually requires.

 7           The Ninth Circuit has rejected that in a case *United*

 8    *States versus Love*, in which the indictment in a fraud case, it

 9    alleged that the state of mind was knowing.  The crime required

10    either knowing or should have known.

11           And the Ninth Circuit found that even though the

12    indictment had identified a particular mental state, it was the

13    mental states covered by the law itself that should be

14    instructed to the jury.  It was not a constructive amendment in

15    order -- to instruct on the elements of the offense.

16           And I can hand this up to, your Honor, and there are some

17    highlighting.  I've copies for Defense counsel as well.

18           (Whereupon document was tendered to the Court and

19            counsel.)

20           **MS. BOERSCH:**  Thank you.

21           **MR. DAWSON:**  There is another case, *United States*

22    *versus Ward*.  And I can just read portions of this.

23           **THE COURT:**  What is the cite?

24           **MR. DAWSON:**  So *Ward* -- and I can hand it up as well.

25    It's 747 F.3d 1184.  And on Page 1191 the Ninth Circuit writes:

1           "We have declined to find a constructive

2       amendment, however, when the indictment simply

3       contains superfluously specific language describing

4       alleged conduct irrelevant to the Defendant's

5       culpability under the applicable statute.  In such

6       cases convictions can be sustained and the proof upon

7       which they are based corresponds to the events -- the

8       offense that was clearly described in the indictment."

9           And what we have here, your Honor, is a speaking

10   indictment that alleges the offense, 371, and the first

11   Paragraph 44 alleges the elements of the offense.  And as your

12   Honor is aware, indictments often allege in the conjunctive and

13   you prove in the disjunctive.  There is not some presumption

14   that whatever fact is alleged in the indictment, therefore,

15   becomes an element and the Government must prove it beyond a

16   reasonable doubt.  If that were the case, every Jury

17   Instruction in a conspiracy case would simply be to read the

18   indictment, which has never been the way it works.

19           Now, there are scenarios in which a constructive amendment

20   may arise if the crime that the Government has proved is not

21   the same one that's been charged, but that's exactly what we

22   have charged.  The charge is --

23           **THE COURT:**  I mean, here is the problem I have.  I

24   think the Government may be right.  The focus is on sole

25   purpose.  In part, the -- you know, I mean, if one were to

1    strike the word "sole" and said -- and simply the indictment

2    said dah, dah, dah, dah, dah, submitted a bid for the purpose

3    of artificially ensuring or for -- for a purpose.  But, I mean,

4    a purpose.  Then we wouldn't have this discussion; right?

5         It's the -- it's the question of, hey, that's the only

6    reason -- did the Government show this was the only reason that

7    the Defendant had this sole reason, this one reason in doing

8    it?  And that's not an element of the offense.

9         Now, it may be in the indictment.  It's not an element of

10   the offense that it be.

11        There is no statute that says that you -- you don't commit

12   mail fraud -- in order to defraud the Government, it has to be

13   your sole purpose to defraud the Government.  There is no

14   statute says that.  That would be ridiculous because everybody

15   would coming in all the time and said, Oh, yeah, there is that

16   purpose, but I did it for Aunt Selma, or, I -- I mean, I had a

17   very good reason.  I never thought it would go through, blah,

18   blah, blah, blah, blah.

19        Now, all those other sort of arguments can negate -- it's

20   not like it's irrelevant.  It can negate the intent.  That is

21   to say, you know, he didn't really have the intention of

22   defrauding the Government because he wanted to help Aunt Selma.

23   That's what his purpose was.  That's why he did this whole

24   thing.

25        Well, if he did, then that may be a defense, because he

 1    didn't have the intention of drawing the Government.  And

 2    that's the difference, I think, looking at it, between --

 3    between, you know, literally taking every single word out of

 4    the indictment and making them elements of the crime.

 5        Mr. Riordan, you've argued this for years.  Go ahead.

 6            MR. RIORDAN:  Your Honor, the Government's position

 7    is that all you have to do is state in broad terms the -- an

 8    element of the crime.  The facts in terms of, for instance,

 9    intent don't make any difference.

10        The case that controls all of this is *Stirone* from the

11    United States Supreme Court.  And in that case what happens --

12            THE COURT:  What case is this?

13            MR. RIORDAN:  *Stirone versus United States*.

14            THE COURT:  And the cite?

15            MR. RIORDAN:  361 U.S. 212-217, 1960.

16        This is the mother load of constructive indictment cases.

17    And what it -- in the indictment in that case someone was

18    charged with a Hobbs violation for interfering with commerce

19    into the state.  Okay?

20        Interfering with commerce is the element.  They charged

21    interfering with commerce into the state and the judge let it

22    go to the jury on commerce into the state and out of the state.

23        And the United States Supreme Court said, wait a minute.

24    You added a factual theory that wasn't charged in the

25    indictment.  Okay?  Entering a particular state or coming in as

1  opposed to coming out aren't spelled out in the Hobbs Act.

2          THE COURT:  There is such a difference.  I mean,

3  think of just what you said.  I could understand that facts

4  matter.  Okay?  Facts matter.  And so we have two factual

5  scenarios:  One is commerce coming in; the other is commerce

6  coming out.

7      By the way, commerce coming out, that's not a question of

8  the state of mind of the Defendant.  That's a question of what

9  the facts show.  Was there commerce coming out, et cetera.

10     So -- and so I haven't read this case, Mr. Riordan, so

11  you'll forgive me if I opine on it.

12     But here you weren't talking about a set of facts in a

13  sense.  You're talking about redefining or defining the

14  Defendant's state of mind that while it does take a factual

15  determination by the jury, because you can't convict somebody

16  if you don't find as a matter of fact he had the state of mind,

17  but it is to take the state of mind and adding to it a

18  filtering system, which would show that the Government has to

19  disprove that there is essentially -- there is any other

20  motivating factor for the Defendant in, quote, submitting the

21  bid.  They would have to show that it was the sole -- and I

22  guess the word is exclusive, the sole and exclusive purpose in

23  submitting the bid.  That's an impossible burden in --

24          MR. RIORDAN:  Your Honor --

25          THE COURT:  -- in my view.

1          **MR. RIORDAN:**  But, your Honor, one critical -- look

2    at *Russell versus United States*, 369 U.S. 749.  This we all

3    agree on.  A critical, critical function of an indictment is to

4    inform the Defendant what charge and what facts he has to

5    defend upon.

6        And it is pretty obvious, and we think it was a very

7    legitimate defense, that the defense we presented based on

8    their allegation of sole purpose was that this was not his

9    purpose.  And not only wasn't it his sole purpose --

10         **THE COURT:**  No, no, no.  Well, wait a minute.  Let's

11   stop.

12       You're saying your defense was based on showing that --

13   that the conduct that he engaged in had purposes other than --

14   purposes in addition to, other than, different from --

15         **MR. RIORDAN:**  Different from.

16         **THE COURT:**  Different from the --

17         **MR. RIORDAN:**  What is alleged to be the sole purpose.

18         **THE COURT:**  That's what we wanted to show.

19         **MR. RIORDAN:**  Right.

20         **THE COURT:**  And you say, that's all we had to show.

21   In other words, we can defeat this case if we can show in

22   addition to -- or notwithstanding whatever a jury would find as

23   to the -- as to the defrauding.

24       If we establish or raise a reasonable doubt -- let's put

25   it that way, raise a reasonable doubt that it was the -- that

PROCEEDINGS

1   it was the only purpose, we win.  We win because we have now

2   established something based upon the indictment.  We've now

3   established that he did not commit the crime --

4          MR. RIORDAN:  Exactly.

5          THE COURT:  -- as charged.

6          MR. RIORDAN:  And they -- all of the Ninth Circuit --

7   this particular name has 14 letters, so I'll stop.  112 F.2d

8   988.  It says a person is entitled under the Fifth Amendment

9   not to be held to answer for a felony except on the basis of

10  facts which satisfied a Grand Jury that he should be charged.

11     The Grand Jury indicted our client because they found

12  evidence offered by the Government that he did this for the

13  sole purpose of artificially ensuring that Myles' bid was the

14  lowest.

15         THE COURT:  Well, wait.  Let's -- I -- I -- I flip

16  back and forth between your argument that -- notice argument

17  and constructive amendment argument.  I know that they are not

18  unrelated, but you're saying the notice that you got, the

19  defense that you prepared was a defense showing that there was

20  a reasonable doubt as to whether it was the sole purpose,

21  because he had other purposes involved.  And that's the

22  beginning and the end of it from your point of view.

23         MR. RIORDAN:  Right.

24         THE COURT:  Okay.  Forget about the other argument,

25  constructive amendment.  Because we know -- because that's --

1   even though it's tied to notice, it's something slightly

2   different, at least in my mind.

3        So I ask you this question.  Let's say the Government

4   said, And the person committed the crime by means of a gun.

5   And it turns out, lo and behold, in the case it wasn't a gun.

6   It was a gub.  Or, no, it wasn't a gub, it was a knife.

7        Okay.  Acquittal or reasonable doubt now?  It's not an

8   element of the offense.

9        We all agree that sole purpose is not an element of the

10  offense.  Everybody agrees with that.  It has to be a purpose,

11  but it doesn't have to be the sole purpose in the indictment.

12       Do you disagree with this, Ms. Boersch?

13            **MS. BOERSCH:**  Well, we --

14            **MR. RIORDAN:**  If you're saying, your Honor, that

15  there is nothing in the statute that makes it the sole

16  purpose --

17            **THE COURT:**  That's what I'm saying.  The statute

18  defines elements, not an indictment.  I don't know that an

19  indictment defines elements in an offense.  It may define

20  certain things that have to be -- that by way of notice, by way

21  of notice, have to be told to the Defense in order to prepare a

22  defense.

23       Ms. Boersch, go ahead.

24            **MS. BOERSCH:**  Mr. Riordan --

25            **THE COURT:**  I'm not going to have you up there moving

1   back and forth like a bobble head.  If you want to say

2   something, you represent an individual defendant.

3          **MR. RIORDAN:**  I will say one more sentence and then

4   wisely defer to someone who may know more about this than I do.

5          But what the Ninth Circuit case has held, and a specific

6   example, and it specifically says if you charge that you robbed

7   the Excelsior Bank on Tuesday and you prove that you robbed the

8   United Chase Bank on Wednesday, the elements are completely the

9   same and --

10          **THE COURT:**  I got that.  Okay.  That's your notice

11   argument.  That's your notice argument.  I got that.

12          And so the question is:  Does the word "sole" and if it's

13   not -- to require it to the sole purpose, because that's what's

14   in there, if you change that, does that -- does that still

15   provide adequate notice to the Defendant to defend himself?

16   That's the issue I have to think about.  You've raised that.

17   I understand that argument.

18          Now, you say, no, it doesn't.  All we had to do, we

19   thought this was a case about just defeating that it's the sole

20   purpose.  Maybe you thought of some other things as well, but

21   you thought that that was good enough.  And when you say --

22   when I say "good enough," just good enough to raise a

23   reasonable doubt.

24          So I can see -- and here is my answer to your bank case.

25   In this case the fact is that the purposes, or purpose, major

1    or collateral or part of or not, the purposes you were aware

2    that you had to defeat -- or put it another way, the Government

3    would have to show that there was a purpose to defeat -- to

4    deceive.

5         In the bank robbery case, the notice is glaring because

6    it's a different place entirely.  It's -- the elements are the

7    same, but the -- but the -- it's a different robbery.

8         **MR. DAWSON:**  You don't know which bank to go get

9    security footage from.

10        **THE COURT:**  Well, anything.  Anything.  It's totally

11   different.  Not totally, I don't -- no need for me to overstate

12   it.  It's different.

13        And so a notice, yeah.  The notice is the -- notice is

14   always a reasonable inquiry, in the Court's mind.  In other

15   words, was this fair.  Give you fair notice about this.  And

16   that's the question.  That's what I have to take a look at.

17        **MR. DAWSON:**  And, your Honor, I would note Paragraphs

18   44, Paragraphs 45, this is the overall scheme that's charged.

19   And the Defendants are latching on to a single word in

20   Paragraph 46, which starts with "as a further part of the

21   scheme to defraud."

22        These are independent.  The charge under the count, it's

23   Building 84.  It's the Department of Energy.  It's this time

24   frame.  There is no doubt about what the Defense has to look

25   into.

1        And this is a case in which the alleged constructive

2   amendment comes not out of the Government's proof, but out of

3   the Defense finding something to quibble with in the specific

4   manner and means.

5        It's comparable to if there were an indictment saying the

6   Defendant were wearing a blue shirt on that day.  And if it

7   turned out he was wearing a red shirt, it has nothing to do

8   with the elements.  It has nothing to do with notice.  The fact

9   that it's in the indictment does not mean the Government needs

10  to prove it beyond a reasonable doubt.

11       And the fact that we're talking about a mental state, the

12  *Love* case, if Mr. Riordan were correct, would have come out the

13  another way.  The *Ward* case would have come out the other way.

14           **MR. RIORDAN:**  Your Honor, you're focused on "sole."

15  Take it out for a minute.  That the -- they submitted this --

16  one, they say they submitted a non-genuine bid.  They

17  absolutely have to be told that.  That's the heart of the case.

18  Okay?

19           **THE COURT:**  Wait a minute.  Wait a minute.

20           **MR. DAWSON:**  No --

21           **THE COURT:**  Wait, wait, wait.  Wait.  Run that by me

22  again.

23           **MR. RIORDAN:**  Well, the indictment -- the

24  centerfold --

25           **THE COURT:**  I want to point out, I think your client

PROCEEDINGS

1    has left the room.  I have no problem if he has --

2          **MS. BOERSCH:**  I told him he could because he had to

3    use the restroom.

4          **THE COURT:**  No, that's fine.

5          **MS. BOERSCH:**  I would like to at some point say

6    something, but I will let Mr. Riordan finish.

7          **MR. RIORDAN:**  The line before:

8          "The Defendant submitted this bid knowing it was

9      not a genuine bid."

10   This is Line 17.

11         **THE COURT:**  That's not an element of the offense.

12         **MR. RIORDAN:**  It's the heart of the Government's

13   theory.  Otherwise, the Government could say, actually, forget

14   about the bidding process entirely.  Okay?  Forget about the

15   bidding process entirely.  They are guilty of an offense

16   because, in the Government's view, they didn't state their

17   qualifications for bonding correctly.  Remember they --

18         **THE COURT:**  The problem is "genuine" means a lot of

19   different things.  It means -- it means, A, it was -- it could

20   have been -- he says, knowing this bid, that it was not a

21   genuine bid.  Does it mean that it wasn't in full compliance

22   with all terms and conditions and understandings of what a

23   proposal was and, therefore, wasn't genuine from that point of

24   view?

25         Was it not genuine from the point of view that it was -- a

PROCEEDINGS

1   purpose of which was to get the $5.9 million bid accepted and

2   that was basically a purpose of it?  Which I think is what the

3   Government has argued.  And, therefore, in that regard was not

4   a genuine bid.

5       It could have been a genuine bid.  It could --

6           MR. RIORDAN:  They used that term  --

7           THE COURT:  Mr. Riordan, Mr. Turner could have done

8   all of the work and said, You know what I think this is going

9   to do?  I think I will do this project at 6.1.  Come hell or

10  high water, I'm going to do it at 6.1.  This bid that I submit

11  today, it's the real McCoy.

12      Throw away the distinction between proposal and bid, which

13  in my mind I don't quite follow.  But at any rate, I can do

14  this.

15      Now, I am submitting a genuine bid.  No question about it.

16  Have I committed a crime?  Well, the answer is maybe yes.

17          MR. RIORDAN:  Under what theory, your Honor?

18          THE COURT:  You want to know what crime it is?

19          MR. RIORDAN:  Yes.

20          THE COURT:  Oh, the crime is knowing that -- that an

21  individual is going to bid, number one, less than you; and,

22  number two, that by doing your $6.1 million bid, you are

23  attempting to get him to have -- get the bid.  Whether yours is

24  genuine or not you are manipulating the system and, also,

25  operating on confidential information, which you ought not to

1    have.  That could be -- that could be a crime.

2           MR. RIORDAN:  Are you going to define that as a

3    possible offense here when you define the conspiracy?  Because

4    those -- you would have a very hard time saying that that's not

5    a constructive amendment of the language in this indictment.

6           MR. DAWSON:  The language in the indictment in

7    Paragraph 44 talks about obstructing the lawful functions and

8    awarding construction contracts through a fair, honest and

9    competitive process.

10          THE COURT:  It's a broad -- it's a broad --

11          MR. DAWSON:  It's a broad charge.

12          THE COURT:  It's a broad charge.  So anything you do

13   to upset it, if it's of a magnitude such that it does, in the

14   juror's mind, upset the fair competitive and honest process,

15   why isn't that a crime?

16          MR. RIORDAN:  Your Honor, let me ask you something.

17          THE COURT:  Another example.  Let's say he goes

18   around and tells everybody else not to bid.  Don't bid.  Don't

19   bid.

20          MR. RIORDAN:  And that's alleged in this indictment.

21          THE COURT:  No, it's not.

22          MR. RIORDAN:  Then how does he defend against that

23   when he doesn't even know until the end of the trial that his

24   alleged defense is not submitting a bid to ensure that Myles

25   gets it, but his alleged offense is going around to other

PROCEEDINGS

```
 1   people and telling them not to bid.
 2         THE COURT:  Because here it does say that he
 3   submitted the bid in an effort to get Myles to get it.
 4         MR. RIORDAN:  Okay.
 5         THE COURT:  That doesn't make it -- that doesn't make
 6   it genuine or not genuine.  You're focusing on the word
 7   "genuine."
 8      I'm trying to figure out, does it have to be a real bid?
 9   If it is a real bid -- putting it the other way, because it
10   said -- it said he didn't do a real bid.  If it is a real bid,
11   then has he complied with the -- has he failed to commit a
12   crime?
13         MR. RIORDAN:  Well, he's accused -- he's put on
14   notice that he's accused of submitting this to artificially
15   ensure that Myles' bid was the lowest bid.  And that is the
16   charge that he has defended against.  That is certainly the
17   charge that was described to the jury.
18         THE COURT:  The jury does not have to find that his
19   bid was genuine or not genuine, and the jury doesn't have to
20   find that -- the jury has to find the intent, what you've just
21   said, but it doesn't have to find essentially the means by
22   which he was doing it.  That is -- that is -- isn't that
23   correct?
24      Ms. Boersch.
25         MS. BOERSCH:  Yes.  Thank you.  I'm sorry, your
```

1    Honor, but sometimes Mr. Riordan will not let me get a word in

2    edgewise, and we have a pattern.

3              THE COURT:  I have that too with Mr. Riordan.  He

4    knows that.

5              MS. BOERSCH:  The point I want to make on behalf of

6    Lance Turner is that what the indictment charges here is a

7    conspiracy.  It charges an agreement to do something.  That

8    agreement is defined in Paragraphs 44 and 46.

9         So when Mr. Riordan talks about what's alleged in

10   Paragraph 46, it's not something irrelevant to an element.  It

11   is actually how the Government has defined factually the

12   agreement that my client supposedly reached with Len or with

13   Taj, who he didn't even know.

14        So to me, the question is:  What are they charged with?  A

15   conspiracy, which is an agreement.  What is that agreement?

16   What defines the scope of that agreement?  Because not just any

17   old agreement is illegal.

18        And the indictment in Paragraph 46 tells my client, here

19   is the agreement that they have to prove you entered with Taj

20   and with Len.

21             THE COURT:  No.  You want to know what the agreement

22   is?  The agreement is to defeat the lawful function of the DOE

23   in awarding construction contracts through a fair, honest and

24   competitive process.

25        You can take -- you can take what Mr. Turner says to the

1   bank.  That is, even if he says this is the beginning of a

2   process -- he says this is the beginning of a process.  Like an

3   invitation.  Well, I don't know whether it is or not.  It makes

4   no difference.  Because what did he think.  He may have thought

5   it was the beginning.  But if at the beginning you corrupt the

6   process, you're as guilty as if it's the last day you corrupt

7   the process.

8       I mean, I don't understand it.  If you -- if you take a

9   piece, that is a material significant piece to the process of

10  competitive bidding, and then -- and then upend that through an

11  agreement that you're going to upend that.  How exactly you're

12  going to do it may be complicated or may change or may be

13  different, but if that's it, that's the conspiracy that has

14  been charged in this case.

15          **MR. RIORDAN:**  Well, let me raise something, your

16  Honor.

17          **THE COURT:**  Yes.  Go ahead, Mr. Riordan.

18          **MR. RIORDAN:**  You're going to define the crime that

19  you're going to define.

20          **THE COURT:**  Pardon me?

21          **MR. RIORDAN:**  You're going to define what the crime

22  is in your instructions, right, at the end of the day?

23          **THE COURT:**  Well, I was intending to give just the

24  instruction that I said I was giving.

25      I mean, you're asking me -- oh, by the way, we haven't

PROCEEDINGS

1   even gotten to your theory of the case, which if you have an

2   instruction on that, I need that.  Okay?

3       But if you say am I going to define it any further than

4   what 8.23 says, I don't think so.

5           **MR. RIORDAN:**  But I'm going to tell the jury what the

6   indictment charges.

7           **THE COURT:**  I don't think you can.

8           **MR. RIORDAN:**  I can't tell a jury what they are

9   charged with in this indictment?

10          **THE COURT:**  They are charged -- well, that's a good

11  question.  Okay.  Let me just think about that.  Let me just

12  think about it a minute.  Because the indictment is not

13  evidence.

14          **MR. RIORDAN:**  It is not.  It is not.

15          **THE COURT:**  And I say to them the Defendant is

16  charged in an indictment with, and I explain what it is.

17  Just -- I'm going through 8.23, as I've just said, 8.23.

18      No, why did I say 8.23?

19          **MR. DAWSON:**  8.21.

20          **THE COURT:**  8.21.  The Defendant is charged in the

21  indictment with conspiring to defraud the United States by

22  obstructing the lawful functions of the Department of Energy by

23  deceitful or dishonest means, blah, blah, blah, and here are

24  the elements.

25      Now, you say, I want to say more about that because I want

PROCEEDINGS

1    to use some of the language of the indictment.  And I'm saying

2    to you, from the top of my head, I don't think I would allow

3    it.

4              MR. RIORDAN:  Well, your Honor --

5              THE COURT:  It's okay.  I mean, I say that

6    respectfully, as you do, but I'm just saying I don't know that

7    you can do that.

8              MR. RIORDAN:  I have never heard of a case where a

9    judge barred a lawyer in closing arguments from saying --

10   referring to something in the indictment.

11             THE COURT:  Really?  I do that all the time.

12             MR. RIORDAN:  Barring them in closing?

13             THE COURT:  I haven't been reversed yet.  That

14   doesn't mean I won't be reversed.  Because the lawyers -- oh,

15   well, Mr. Riordan, let me just turn it around.  Turn it around.

16       I haven't had a lawyer get up in front of me and say to

17   me, I want to read the words of the indictment.

18       So we're both at the end of our careers in exactly the

19   same position, but vice-versa.  Neither of us have had this

20   experience.  I've never had the experience of a lawyer saying

21   it and you've never had a judge saying you can't do it.

22       So let's -- let's move ahead on that one.

23             MR. RIORDAN:  Let's take out the word "the

24   indictment."  Are you telling me you're going to forbid me from

25   saying:  The Government accused my client of submitting this

1  bid to maintaining it the lowest bid.  That's what the

2  Government accused my client of.  I'm going to do that.

3       THE COURT:  You can say whatever you want to say in

4  that regard.

5       MR. RIORDAN:  Okay.

6       MR. DAWSON:  Whatever he says, I'll remind the jury

7  that you give the law and not the lawyers.

8       MR. RIORDAN:  Fair enough.

9       THE COURT:  I'm not -- and the reason I'm saying you

10 can do what I think you want to do, is because -- because I

11 think that you can comment on the lack of evidence to establish

12 an element of the crime.  So I'm not at all foreclosing you

13 from doing that.

14     I am foreclosing you to say the indictment said X.  The

15 indictment said Y.  That's what I'm foreclosing.

16      MR. RIORDAN:  We'll preserve our error -- claim of

17 error as to your instruction.

18      THE COURT:  Right.  I understand that.

19      MR. RIORDAN:  And, obviously, we're going to say that

20 because that has been the focus of all of the evidence in this

21 case.  So we're --

22      THE COURT:  I'm not sure of what the focus of all the

23 evidence in the case is.

24      MR. RIORDAN:  Well, that's a good point, with Mr.

25 Myles.

1          THE COURT:  Wait a minute.  I want to look at

2   something a minute.

3       (Brief pause.)

4          THE COURT:  Who is quoting *Stirone*?

5          MR. RIORDAN:  I'm sorry.  I should have referred to

6   Ms. Boersch earlier because the point that she made was

7   probably a better point than ones I was making about the nature

8   of the conspiracy in this case.

9          THE COURT:  Let me just read something, okay?

10      (Brief pause.)

11         THE COURT:  I will look at this later.  Okay.

12      Ms. Boersch, are you being deferred to?  Do you want to

13   say something further?

14         MS. BOERSCH:  I'm fine right now, but I appreciate --

15   I guess the only thing I would add is on the conspiracy, I have

16   asked for a mere presence instruction.  I don't know if you

17   wanted to address that now or at some other point.

18         THE COURT:  I think I should add that to it.  Are you

19   requesting it?

20         MS. BOERSCH:  I am requesting it.

21         THE COURT:  And I'm going to give it.

22         MS. HOPKINS:  Your Honor, I believe it's already

23   incorporated into the Conspiracy instruction.

24         THE COURT:  Well --

25         MR. DAWSON:  I could be wrong.

1      THE COURT:  Look.  Yes, you're right and she's right.

2   So I'm going to give -- I'm going to give it.  Because it's

3   included in the overall instruction in a generalized way.

4      Here the evidence is substantial that he was there and

5   said very little.  And you could say whatever he said and you

6   could say whatever it means.  But I think it's appropriate to

7   give him that.

8      And that is in the sense, in part, your defense in the

9   case.

10      MS. BOERSCH:  That is my theory of the defense.

11   That's right.  That's right.

12      THE COURT:  Okay.  So I think -- sorry.

13      MS. BOERSCH:  Sorry.  I think -- I did submit a

14   separate instruction.  I would request that it be separate and

15   not just the standard 8.21 because I do think it needs to be

16   called out as a -- to the jury so they understand and are

17   paying attention when it's -- when they are instructed.

18      THE COURT:  They always pay attention.

19      Okay.  Next?

20      THE COURT:  Do I give -- I don't give a withdrawal

21   from the conspiracy.  That's not around.

22      MR. RIORDAN:  No, we're not asking for the

23   withdrawal.

24      THE COURT:  Okay.  Anything else?

25      MR. RIORDAN:  Yes.  We need an *Escobar DeBright*

PROCEEDINGS

1  instruction, which informs the jury that an individual cannot

2  commit a conspiracy by an agreement -- agreeing to a Government

3  agent.  We've drafted one.  That's the law, Ninth Circuit law

4  on that.

5           MR. DAWSON:  I mean, I think the conspiracy

6  instruction specifies the participants of the conspiracy.  So

7  it will be perfectly available to Defense counsel to argue.

8           MR. RIORDAN:  No, no.  It's not a matter of arguing.

9  It's a matter of law.  The Ninth Circuit law.  A jury isn't

10 going to know that you can't conspire with a Government agent.

11          THE COURT:  There is a special instruction somewhere

12 around here.

13          MR. DAWSON:  Is there a model?

14          THE COURT:  I thought there was some model

15 instruction as to whether or not the Government -- they have to

16 agree who is a Government agent, or something like that.

17          MS. BOERSCH:  That's different.

18          MR. RIORDAN:  That's part of the entrapment

19 instruction.

20          THE COURT:  Okay.  Okay.  I think it's worthwhile to

21 say:  In this case the -- you are to -- you are to -- well,

22 wait.  Mr. Johnson/Mr. Myles is a Government agent -- is a

23 Government agent for the purpose of these instructions.  Mr.

24 Worthen and Mr. Reid are not Government agents.

25          MS. BOERSCH:  So, your Honor, we can submit this so

PROCEEDINGS

```
1   you have it, but the instruction we would request would say:

2           "Each of the defendants in this matter has been

3       charged with conspiracy to defraud the United States

4       Department of Energy.  A Defendant who conspires only

5       with a Government agent cannot be convicted of this

6       offense.  Therefore, in order to convict either

7       Defendant in this matter, you must find beyond a

8       reasonable doubt that he engaged in the charged

9       conspiracy with at least one person other than

10      Government Agent William Myles."

11      And that's the *Escobar DeBright* and other cases.

12          THE COURT:  What's the Government's response to that?

13          MR. DAWSON:  That's the first we've ever heard of it,

14  so we would like a chance to look into the law underlying it.

15          THE COURT:  Okay.  You'll get --

16          MR. RIORDAN:  We had raised it with the Court

17  previously.

18          THE COURT:  Well, that's all right.  Look, you know,

19  we're loose here.

20      Okay.  Go ahead.

21          MR. RIORDAN:  I had typed out a theory of the defense

22  instruction and it contained the language about --

23          THE COURT:  You better give me something.

24          MR. RIORDAN:  It contained the language -- I'm

25  junking that.
```

1          THE COURT:  Okay.  So I can ignore that, which I
2    haven't read.

3          MR. RIORDAN:  Right.  Well, could I read --

4          THE COURT:  It's going to be tough, but I may be able
5    to do it.

6          MR. RIORDAN:  Can I read this into the record?

7          THE COURT:  Of course.  What are you reading into the
8    recorded, the thing you wanted --

9          MR. RIORDAN:  My handwritten request for a theory of
10    defense instruction.

11          THE COURT:  I'm going to give you.  I think you're
12    entitled to a theory of defense instruction.  So why don't you
13    read to me that which you want me to give?

14          MR. RIORDAN:  Okay.  It would be:

15          "The Defendant's contend that the proposal that
16       the Turner Group submitted was a genuine proposal
17       submitted for the purpose of obtaining the LBNL
18       contract for the Turner Group.  The Defendants contend
19       that they submitted their proposal with no intent to
20       defraud and no intent to undermine the Department of
21       Energy's fair and competitive bidding process."
22       That's our theory of the defense.

23          THE COURT:  Okay.  As to the second sentence, that
24    clearly is appropriate.  I mean, that's like we pled not guilty
25    to it.  We did not intend to do this and with these results.

1  That's fine.  I could give the second part.  I think is -- I

2  think is in every case in which a Defendant has pled not

3  guilty.

4      The first part is the one that, I think, bears some

5  discussion.

6          MR. RIORDAN:  Well, what we're contending is that

7  this is their theory of the defense.  I mean, the Court

8  isn't -- we haven't said in here that the Government has to

9  prove anything.

10     We've just said they contend that the proposal that the

11  Turner Group submitted was a genuine proposal submitted for the

12  purpose of obtaining the LBNL contract for the Turner Group.

13         THE COURT:  Yeah, but --

14         MR. RIORDAN:  We're not asking the Court to endorse

15  that.

16         THE COURT:  No, no.  I understand that.  But aren't

17  you -- isn't the -- isn't the missing link here the -- giving

18  the first sentence and then saying and therefore did not, or

19  thereby did not.

20         MR. RIORDAN:  Well, there is no --

21         THE COURT:  That's really what you are saying.  I'm

22  not trying to put words in your mouth, but isn't that -- you've

23  got to connect the A with the B, and you haven't done that.

24  But I think you can do it by saying "and thereby."

25     That is your defense.  I mean, that's what I heard you say

 1    all afternoon.

 2            MR. RIORDAN:  All right.  Well, we'll type it out and

 3    submit it.

 4            THE COURT:  Okay.  Type it out and submit it.  And if

 5    you add some comments to it, I'll do it.

 6        What I would like you to do -- I know it's really early in

 7    the day.  I would like you to come back here at 4:00 o'clock

 8    today.  I think it's important to settle on this in a serious

 9    way.  I'm saying, settle on these instructions.  And so

10    everybody goes home and they prepare a nice closing argument.

11            MR. RIORDAN:  We're left with the entrapment

12    instruction.

13            THE COURT:  We'll get to that right now.

14        Entrapment, okay.  We're there.

15            MR. RIORDAN:  Okay.  We submit -- actually, all we

16    would do is take your ruling in the Reid case and repeat it, in

17    which you quoted Judge Reinhardt's opinion and said any

18    evidence, no matter what, real credibility et cetera, et cetera

19    is sufficient and --

20            THE COURT:  Let me cut through it.  I think that's

21    right.  Judge Reinhardt has set the bar.  He set the law of the

22    circuit.  And the law of the circuit, I think, is -- any --

23    it's almost like slightest evidence.

24            MR. RIORDAN:  Yes.

25            THE COURT:  What is the evidence?  Okay.  There is

PROCEEDINGS

1   some -- some evidence.  The argument is that -- there is no

2   evidence of predisposition.  I wouldn't intend to say anything

3   about that.

4            **MR. RIORDAN:**  We agree.

5            **THE COURT:**  Okay.

6            **MR. DAWSON:**  What do you mean?

7            **THE COURT:**  There is no --

8            **MR. DAWSON:**  Well, A factor of predisposition is --

9            **THE COURT:**  Was predisposed to commit a crime.

10           **MR. DAWSON:**  And how quickly he accepts the

11  opportunity to commit a crime.  The factors that are listed in

12  the instruction, there are lots of circumstantial evidence that

13  the Defendant was predisposed.  This is setting aside the fact

14  that Taj Reid was the one proposing.

15           **THE COURT:**  I see.  I see.  Okay.  I'll give the

16  complete instruction.

17       I think if they want to argue he is predisposed by virtue

18  of the fact that they didn't have -- before any of this --

19  before a lot of the other stuff, if they argue it, if they

20  argue it.

21       Let me flip to the end a minute.  The evidence of

22  inducements I think are several.  One is, is the bonding --

23  which is a matter of fact.  Was he promised bonding as an

24  inducement over and above this project?  Was he -- was he

25  promised or induced or suggested that he would have other

```
1    projects over and above this project?

2         So I think that's all some evidence --

3              MR. DAWSON:  If I may, your Honor.

4              THE COURT:  Yeah.  If I could get to finish my

5    disjointed thought.

6              MR. DAWSON:  Forgive me.

7              THE COURT:  I think it's all some evidence that can

8    be argued it was an inducement.  That goes beyond the simple,

9    just the quid pro quo.

10        Now, the Government could argue, wait a minute.  Those

11   things, the bonding, there was never a promise for other

12   things.  There is a promise for this thing.

13        Two, a project and how much you would get out of it and so

14   forth, yeah.  It was related to this project.

15        Therefore, it's simply that the quid of the quid pro quo

16   or the quo of the quid or whatever it is.  It's the other side

17   of the transaction.  He wasn't just getting $100,000.  He was

18   getting the project.  That's what it looked to him.  He was

19   getting the project.

20        So it's not a separate inducement.  It's the inducement --

21   it's part and parcel of this particular crime.  It's why he

22   agreed to commit this particular crime.

23        Okay.  Go ahead.  That's what I think is the argument on

24   both sides.  And I don't know why that's not a factual

25   determination.
```

1              **MR. DAWSON:**  One problem is that Judge Reinhardt's

2    opinion, which I am familiar with, did not address the question

3    of where a non-Government agent proposes the crime and the

4    Defendant accepts the crime before any Government agent talks

5    to him.

6         September 11th in the recording that, as you noted, we've

7    heard repeatedly, Len Turner gets on the phone and says:  I'll

8    put that number on my letterhead.  I'll send the bid in.

9         There was no opportunity for inducement.  Nothing had

10   happened.  It was a private party who invited Len Turner and

11   then he joined.

12        You cannot retroactively entrap somebody by two months

13   later saying, Oh, maybe I'll give you some bonding.

14        The September 11 bid represents that the Defendant had

15   joined the conspiracy before any inducement even could take

16   place.  That is a separate issue from what Judge Reinhardt was

17   talking about.

18        And there is clear Ninth Circuit rule that if it is a -- a

19   private party who is passing along an opportunity and the

20   Defendant agrees before the Government comes on the scene, it

21   can't be entrapment.

22             **MR. RIORDAN:**  And, your Honor, the -- there is no

23   evidence that Taj Reid described any illegal activity to Len

24   Turner.  He doesn't even mention -- he figures out at the end

25   after -- after he's talked to Turner, Oh, you want a phony bid.

PROCEEDINGS

1        More importantly, the Defendant has said, testified, that

2   he was never told that.  So it's clearly a factual question for

3   the jury.

4         THE COURT:  I think maybe the Government is entitled

5   to an instruction showing the temporal connections and so

6   forth.  It's if you find -- or for this to be an offense, it

7   has to be that.  Bah, bah, bah, bah, bah.  Offered by the

8   Government -- offered by the Government.  And in -- prior to --

9   prior to the Defendant joining the conspiracy.  Is that right?

10   Joining the conspiracy, isn't that enough?

11         MR. DAWSON:  And the Government did propose such a

12   modification to the entrapment instruction in our most recent

13   supplemental brief.

14         THE COURT:  I'll look at it.  I'll find it.  I'll

15   find it.

16         MR. RIORDAN:  Can we go back to the Court's initial

17   and quite correct ruling, that you shouldn't even instruct on

18   predisposition because what the Government always leaves out

19   when it discusses this is it has to prove beyond a reasonable

20   doubt that the Defendant was predisposed to commit the crime

21   before being contacted by Government agents.  That's May 9th.

22        There is nothing, there is not a whisper of a suggestion

23   that there was any predisposition before May 9th.  And, in

24   fact, the Government has said, Oh, the May 9th meeting, that

25   had nothing to do with him at all.  It had to do with Taj Reid.

1          THE COURT:  Where is the entrapment defense?  What

2    number is it?

3          MR. RIORDAN:  6.2.  And the paragraph that I'm

4    referring to is denominated number one.  It's the second

5    paragraph.

6          THE COURT:  Let me read that.

7       (Brief pause.)

8          THE COURT:  Oh.  So they say -- the model instruction

9    is:

10          "The Government must prove either the Defendant

11          was predisposed to commit the crime before being

12          contacted by a Government agent."

13          MR. DAWSON:  And, your Honor, that line comes from a

14   Supreme Court case in which there was something like a two-year

15   endeavor on the part of investigators to convince and propose

16   illegal activity on the part of a Defendant.

17       In this case you have a May 9th meeting, which everybody

18   agrees was not part of any criminal conduct.  Nothing was

19   proposed.  And it's not part of any ongoing course.  Then five

20   months pass and we -- four months, and we get to September.

21       The fact that on September 11th the Defendant --

22          THE COURT:  Logically, logically it seems to me that

23   the temporal connection has to be that the inducements have to

24   occur before the Defendant agrees to commit the crime.

25       I mean, I -- even if he met Government Agent X two years

1    earlier, so what?  So what?  What's the difference?  Why does

2    that make a difference?  I don't know.

3              MR. DAWSON:  It would only make a difference in this

4    case -- the Supreme Court discussed about these long-term

5    endeavors, but it doesn't apply here.

6        So the fact that the Defendant was willing to put this

7    number on his bid, September 11th, 2013, the idea that

8    something about his predisposition had changed from May 9th to

9    September 11th, he's a grown man.  He has been working in the

10   industry for awhile.  There is no evidence of any Government

11   conduct that could have affected his predisposition.

12             THE COURT:  All right.  Don't all give me a preview

13   of your argument.  You're going to ruin it for me tomorrow.  I

14   mean, I'm here.  I'm here with the best lawyers I could find

15   and you're going to let me hear it twice?  No, no, no, no.  You

16   don't do that.

17             MR. RIORDAN:  And there is no evidence -- any

18   evidence that he had any criminal inclination before May 9th.

19   Nothing, nothing, nothing.

20             THE COURT:  Okay.  Do me a favor tomorrow.  Try not

21   to interrupt each other by saying there is no evidence of this.

22   There is no evidence of that.  Because I always have -- I

23   either say something totally inappropriate or I agree with one

24   side, or the other, or I say the standard thing, which means

25   nothing to the jury at all about how you are the judge of the

PROCEEDINGS

1    evidence.

2         Okay.  I'll see you hear at 4:00.  Bye, everybody.

3              **MS. BOERSCH:**  Your Honor, on the *Escobar*, there is a

4    copy.

5         (Whereupon document was tendered to the Court.)

6              **MS. BOERSCH:**  And they have a copy.

7              **THE COURT:**  Thank you.  Thank you.  Thank you.  Thank

8    you.

9         (Whereupon there was a recess in the proceedings

10          from 2:41 p.m. until 4:00 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>**CERTIFICATE OF REPORTER**</u>


I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Friday, October 12, 2018